UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Source Food Technology, Inc.,                         Civil No. 05-634 (DWF/AJB)

           Plaintiff,

v.                                                    **MEMORANDUM**
                                                       **OPINION AND ORDER**

United States Fidelity and Guaranty Company,

           Defendant.

___

Lawrence A. Moloney, Esq., Gray Plant Mooty Mooty & Bennett, counsel for Plaintiff.

Jonathan D. Jay, Esq., Nicholas S. Kuhlmann, Esq., and Terrance C. Newby, Esq., Leffert Jay & Polglaze, P.A., counsel for Defendant.

___

### Introduction

The above-entitled matter came before the undersigned United States District Judge on November 9, 2005, pursuant to Defendant United States Fidelity and Guaranty Company's ("USF&G") Motion for Summary Judgment against Plaintiff Source Food Technology, Inc., ("Source Food"). In its Complaint (the "Complaint"), Source Food asserts a cause of action for breach of contract and requests declaratory judgment. For the reasons set forth below, USF&G's motion is granted.

### Background

Source Food is a Minnesota company that removes cholesterol from beef products and sells the resulting product to the food industry. USF&G is a property and casualty insurance company located in Maryland. Source Food purchased an insurance coverage policy (the "Policy") from USF&G that

included property and business interruption coverage for certain kinds of damages caused by "direct physical loss."[1]  (Affidavit of Jonathan D. Jay ("Jay Aff."), Ex. B at ¶ 7.)  The Policy does not define "direct physical loss."  The Policy was effective from June 10, 2002, to June 10, 2003.

On May 23, 2003, the United States Department of Agriculture (USDA) closed the United States border to the importation of beef and beef products from Canada.  The USDA's decision to close the border was prompted by the discovery of bovine spongiform encephalopathy ("mad cow" disease) in Canadian cattle.  Source Food contends that, at the time, its only source of beef products was Hubbert's Industries in Brampton, Ontario ("Hubbert's").  Source Food contends that Hubbert's packaged and loaded an order of beef onto a truck for Source Food that it was unable to ship due to the border closing.  Consequently, Source Food contends that its best customer, Casey's General Store, terminated a contract with Source Food.  Source Food does not allege that any of its beef

---

1   Specifically, the Policy provides:

(1)   "Business income."  We will pay the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration."  The suspension must be caused by *direct physical loss* to Property (other than those items listed in SECTION I.A.2.), including Property Off Premises, and result from any Covered Cause of Loss.

. . .

(4)   Action by Civil Authority.  We will pay for the actual loss of "business income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the described premises due to *direct physical loss* to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

(Footnote Continued on Next Page)

products were actually affected or contaminated by mad cow disease.

In July 2003, Source Food presented an insurance claim to USF&G for the alleged losses arising from the business interruption caused by the USDA's May 2003 border closing to the importation of Canadian beef products. USF&G denied Source Food's claim, in part, on the ground that there was no "direct physical loss" to Source Food's property. (Jay Aff., Ex. B at ¶ 9.)

In August 2004, Source Food brought this action in Hennepin County District Court against Defendants St. Paul Travelers Companies, Inc. ("SPTC") and St. Paul Fire & Marine Insurance Company ("SPF&M"). In an Amended Complaint, Source Food added USF&G to the lawsuit. The Defendants filed a motion to dismiss, asserting that SPTC and SPF&M were not proper parties and that Source Foods failed to state a claim because the Complaint failed to allege "direct physical loss" to covered property. Source Food filed a motion for summary judgment, asserting that it was entitled to recover under the Policy because it suffered "direct physical loss." In an order dated March 3, 2005, the state court dismissed SPTC and SPF&M from the lawsuit, but denied in part the Defendants' motion to dismiss for failure to state a claim. The state court also denied Source Food's motion for summary judgment. USF&G then removed the case to federal court based on diversity of citizenship.

USF&G contends that it is entitled to summary judgment because Source Food has not satisfied the Policy's "direct physical loss" requirement. Source Food, however, asserts that USF&G is prohibited from challenging the issue of "direct physical loss" under the "law of the case" doctrine

---

(Footnote Continued from Previous Page)
(Notice of Removal, Affidavit of Terrence C. Newby in Support of Defendant's Motion to Dismiss the Amended Complaint, Ex. A at I.A.4(b)(1) and (4) (emphasis added).)

because, according to Source Food, the state court ruled on this issue in its March 3, 2005 order.[2]

Alternatively, Source Food contends that it has satisfied the Policy's "direct physical loss" requirement.

## Discussion

**I.     Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth

---

2      In its Memorandum in Opposition to Defendant's Motion for Summary Judgment, Source Food asserted that USF&G's claim that Source Food suffered no "direct physical loss" was barred under the doctrine of collateral estoppel. (*See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum") at 7.) At oral argument, however, Source Food
(Footnote Continued on Next Page)

specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.    Law of the Case

Under the "law of the case" doctrine, courts are generally prohibited from relitigating an issue that a court has previously decided in a case. *Liddell v. State of Missouri*, 731 F.2d 1294, 1304 (8th Cir. 1984). An exception to this general precept is when intervening legal authority "clearly demonstrates the law of the case is wrong." M*orris v. Am. Nat'l Can Corp.*, 988 F.2d 50, 52 (8th Cir. 1993).

Source Food alleges that the state court was presented with the issue of whether direct physical loss can be established by a loss of function due to the imposition of a government regulation where physical damage is absent. Further, Source Food alleges that the state court ruled on this issue, holding that "direct physical loss can be established merely by showing impairment of function due to the imposition of government regulation." (Plaintiff's Memorandum at 8.) USF&G, however, contends that the state court did not adjudicate the issue of what constitutes "direct physical loss" under Minnesota law. The Court agrees.

Here, the state court did not conclude that direct physical loss may be established merely by showing impairment of function due to the imposition of a governmental regulation. Instead, the state court denied Source Food's motion for summary judgment, concluding that issues of material fact

---

(Footnote Continued from Previous Page)
withdrew this assertion and instead asserted that USF&G was barred from bringing this claim under the "law of the case" doctrine.

remained in dispute. (Jay Aff., Ex. 1 at 4.) Additionally, the state court denied in part USF&G's motion to dismiss on the ground that Source Food had stated a claim for relief. (*Id.*)

In its Order dated March 3, 2005, the state court held:

> In this case, Plaintiff has set forth a legally sufficient claim for relief. It argues that "direct physical loss" is not defined in the insurance policy and that under Minnesota law, the loss of the function of the food equates to "direct physical loss" for purposes of the policy. Plaintiff [Source Food] argues that because the function of food is to be sold with an assurance that it meets certain regulatory standards, after the USDA determination, the beef from Hubbert's failed to meet the regulatory standards. This failure, was the "direct physical loss."

(*Id.*) Source Food's assertion that the state court ruled on the issue of "direct physical loss" as a matter of law is contrary to the plain language of the state court's order. The state court's statements merely repeated the arguments that USF&G made in its motion to dismiss for failure to state a claim. However, to the extent that the state court ruled on the issue of "direct physical loss," the state court's determination was clearly erroneous.

Accordingly, the Court rejects Source Food's assertion that the State Court ruled on the issue of whether "direct physical loss" can be established by showing impairment of function due to the imposition of a governmental regulation. Thus, the Court rejects Source Food's assertion that the "law of the case" doctrine precludes the Court from ruling on this issue.

**III.    Coverage under the Policy**

The interpretation of a contract is a legal question for the court to decide. *White Consol. Indus., Inc. v. McGill Mfg. Co., Inc.*, 165 F.3d 1185, 1190 (8th Cir. 1999). Here, the Court is asked to decide whether the losses suffered by Source Food when Source Food was unable to obtain Canadian beef due to the USDA's border closing constituted "direct physical loss" under the Policy.

The parties agree that this matter is appropriately analyzed under Minnesota law.

USF&G contends that the direct physical loss provision in the Policy requires physical, tangible injury to property before coverage applies. USF&G cites several cases in support of its contention. First, USF&G relies on *Marshall Produce Co. v. St. Paul Fire & Marine Ins. Co.*, 98 N.W.2d 280, 285 (Minn. 1959), in which the insured's policy covered against "loss or damage" by fire. In *Marshall Produce*, the Government rejected acceptance of drums of egg powder after smoke from a fire in a nearby building penetrated the insured's plant that housed the egg powder. *Id.* at 286. The Government rejected the egg powder on the ground of violation of prescribed sanitary requirements including, specifically, contamination of the products stored or contained in the plant during the resulting smoke penetration. *Id.* The Court in *Marshall Produce* found that the egg powder sustained loss and damage by fire under the insurance policy where the packaging sustained smoke contamination, even though it was unclear whether the egg powder was also contaminated. *Id.* at 427.

Second, USF&G cites *Rest Assured, Inc. v. Am. Motorist Ins. Co.*, 1999 WL 431112, *1 (Minn. Ct. App. 1999), in which the insured's policy covered "direct physical loss" to property due to collapse of a building. In *Rest Assured*, the insured sought and recovered damages under its policy for the damage caused when roof trusses broke from the weight of heavy snow. *Id.* Additionally, the insured sought to recover for unbroken trusses that were deemed insufficient to carry the tension load and that were contrary to the specifications in the construction drawings. *Id.* The Minnesota Court of Appeals held that the unbroken trusses were not injured under the weight of snow on the roof, and therefore did not suffer any "direct physical loss" under the policy. *Id.* at *2.

Finally, USF&G relies upon *Pentair, Inc. v. Am. Guarantee and Liab. Ins. Co.*, 400 F.3d 613, 614 (8th Cir. 2005), in which the Eighth Circuit addressed the "direct physical loss or damage" provision within an all-risk manuscript property insurance policy. In *Pentair*, the insured sought insurance coverage for losses sustained from manufacturing delays when an earthquake struck Taiwan and disabled a substation that provided electric power to factories that supplied products to the insured's subsidiary. *Id.* The Eighth Circuit rejected the insured's assertion that its supplier's inability to function after the loss of power constituted "direct physical loss" or damage. *Id.* at 616.

Source Food, on the other hand, relies on *General Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001), and *Sentinel Mgmt. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997), to support its assertion that "direct physical loss" may be found where the function of the insured property is impaired or destroyed by a governmental regulation despite a lack of destruction to the property. In *General Mills*, the Minnesota Court of Appeals held that the insured suffered a direct physical loss of insured property where the covered property—grain, was sprayed with an unapproved pesticide by the USFDA and could not be lawfully sold under FDA regulations. *Id.* at 152. The court held that, though the contaminated oats may have been safely consumed, the fact that the oats did not conform to the appropriate FDA regulations caused an "impairment of function and value sufficient to support a finding of physical damage." *Id.* In *Sentinel Management*, the Minnesota Court of Appeals held that the insured suffered a direct physical loss of insured property where the function of an apartment building was seriously impaired or destroyed by the presence of asbestos fibers, despite that the asbestos contamination did not result in tangible injury to the physical structure of the building. *Id.* at 300.

Additionally, Source Food contends that USF&G's reliance on *Marshall Produce* is misplaced because, in that case, there was no damage to the insured food. Source Food contends that *Marshall Produce* supports its assertion that direct physical loss results when a governmental regulation impairs the value of the insured property, despite lack of physical contamination. Further, Source Food asserts that the *Pentair* Court's determination that a finding of direct physical loss requires physical damage or contamination to insured property under Minnesota law is dicta that the Court need not follow. Source Food also asserts that this dicta contradicts the holdings in *General Mills* and *Marshall Produce*.

Viewing the evidence in the light most favorable to the nonmovant, the Court finds that Source Food did not suffer "direct physical loss" to its property. The courts in the cases cited by Source Food do not stand for the proposition that functional impairment of insured property due to a governmental regulation, absent physical contamination, constitutes "direct physical loss." Indeed, to read the "direct physical loss" provision so broadly would render the word "physical" meaningless. Instead, the Minnesota cases on which Source Food relies, all involved physical contamination to the insured property. In *General Mills*, grain was contaminated by the application of an unapproved pesticide. In *Sentinel*, an apartment building was contaminated by asbestos fibers. And in *Marshall Produce*, the egg powder's packaging was contaminated by smoke. While functional impairment may result from physical contamination, Source Food has not cited any case holding that the mere functional impairment without any physical contamination constitutes "direct physical loss" under a similar insurance policy.

The Court does not need to reach Source Food's assertion that the Eighth Circuit's discussion of "direct physical loss" in *Pentair* was dicta. In *Pentair*, the Eighth Circuit determined that the mere loss of use or function of insured property does not constitute "direct physical loss" under Minnesota

9

precedent. The Court reaches the same conclusion after analyzing Minnesota case law.

Here, Source Food admits that the beef it acquired in Canada from Hubbert's was not contaminated or damaged in any way. Instead, Source Food alleges that the beef was functionally impaired due to the USDA's border closing on Canadian beef. The Court concludes that Source Food's contention contradicts Minnesota precedent and that USF&G is entitled to summary judgment as a matter of law.

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. Defendant USF&G's Motion for Summary Judgment (Doc. No. 9) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  December 7, 2005			s/Donovan W. Frank
						DONOVAN W. FRANK
						Judge of United States District Court